UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
1:19-cv-209-MOC-WCM

| MARTIN JAMES BROOKS, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | **ORDER** |
|  | ) |  |
| JENNIFER SERIO, | ) |  |
|  | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**THIS MATTER** comes before the Court on Defendant's Motion to Dismiss. (Doc. No. 5).

**I. BACKGROUND**

Plaintiff Martin James Brooks and Defendant Jennifer Serio Brooks are former spouses, having divorced on June 14, 2018. The parties have two children together.

A. Plaintiff's First Action Against Defendant (the "Domestic Action")

Plaintiff filed an action against Defendant on April 11, 2018, in the North Carolina General Court of Justice, District Court Division, captioned Martin James Brooks v. Jennifer Serio Brooks, McDowell County file number 18-CVD-315 (the "Domestic Action"). In the Domestic Action, Plaintiff brought claims related to the parties' domestic separation, including claims for child custody, child support, equitable distribution, and absolute divorce. Defendant filed an Answer and Counterclaims on June 13, 2018, bringing claims for child custody, child support, postseparation support, alimony, attorneys' fees, and equitable distribution. As of the filing of this action, only the claim for absolute divorce was fully resolved.

1

B.  Plaintiff's Second Action Against Defendant (the "Domestic Violence Action")

Plaintiff filed an application for a domestic violence protective order against Defendant on June 3, 2019, in the North Carolina General Court of Justice, District Court Division, captioned Martin J. Brooks v. Jennifer J. Serio, Rutherford County, file number 19-CVD-636 (the "DV Action").  Plaintiff filed the application pursuant to North Carolina's Chapter 50B, which governs domestic violence and provides for the entry of domestic violence protective orders.  In that action, Plaintiff filed his original Complaint and Motion for Domestic Violence Protective Order (the "original DV Complaint") on June 3, 2019.  (Ex. A).  Plaintiff filed an Amended Complaint (Domestic Violence Protective Order) (the "Amended DV Complaint") on June 11, 2019.  (Ex. B).  Among other things, the Amended DV Complaint both incorporated by reference the claims and allegations of the original DV Complaint and expanded the request for relief.   (Ex. B at p.1; Ex. B at pp. 4-5).

In the DV Action, Plaintiff made various factual allegations to support his request for a protective order against Defendant.  That is, on the form titled "Complaint and Motion for Domestic Violence Protective Order," Plaintiff filled out Section 4, which states, "The defendant has attempted to cause or has intentionally caused me bodily injury; or has placed me or a member of my family or household in fear of imminent serious bodily injury or in fear of continued harassment that rises to such a level as to inflict substantial emotional distress; or has committed a sexual offense against me in that: (Give specific dates and describe in detail what happened.)."  In this section of the form, Plaintiff handwrote the following:

> invasion of privacy/violation of ECPA and CFAA
> spying on a spouse/snooping email and cell
> intentional infliction of emotional damage
> revenge porn, cyberstalking
> computer trespass, hacking,

2

defamation, libel, slander, stalking, harassment.

(Ex. A, p. 3; Ex. B, p. 5). On the form, Plaintiff checked off numerous actions that he wanted as relief, including an order for Defendant not to assault, threaten, abuse, follow, harass, or interfere with Plaintiff and his children, an order for Defendant to stay away from and his online accounts, an order prohibiting Defendant from possessing or purchasing a firearm, an order requiring Defendant to attend an abuser treatment program, and an order for Defendant "to stop harassing [a co-worker of Plaintiff] and all other business clients, associates, or personal contacts." (Id. at 4-5).

On June 11, 2019, before a hearing was held on the emergency protective order in the DV Action, the parties reached an agreement in which the DV Action was dismissed with prejudice pursuant to a handwritten Memorandum of Judgment entered in the Domestic Action ("Memorandum of Judgment"). (Ex. 4). The Memorandum of Judgment enjoined Defendant from accessing Plaintiff's online accounts (e.g. financial, email, and social media accounts) and prevented Defendant from further disparaging Plaintiff and his business.

C. Plaintiff's Pending Action Against Defendant in this Court

Plaintiff filed the pending action in this Court on June 24, 2019, thirteen days after entry of the MOJ/Order in the DV Action.[1] Here, Plaintiff makes the following, factual allegations against Defendant, many of which mirror factual allegations made in the DV action: (1) Defendant accessed or attempted to access Plaintiff's iCloud account on various occasions; (2) Defendant accessed Plaintiff's text correspondence, saved various messages, sent messages on

---

[1] Defendant asserts that, several weeks after filing the current action, on July 11, 2019, Plaintiff also filed a motion in the Domestic Action related to child custody, again making allegations that are identical in substance to the allegations made both in the DV Action and in this lawsuit.

3

Plaintiff's behalf, and sent messages to herself; (3) Defendant accessed or attempted to access Bank of America accounts belonging to Plaintiff; (4) Defendant changed the email associated with Plaintiff's Instagram account; (5) Defendant used Plaintiff's name and photo to create a fictitious Instagram account to impersonate Plaintiff and then engaged in various activities with that account; and (6) Defendant accessed or attempted to access Plaintiff's Dropbox account in order to obtain information contained therein. Based on the above factual allegations, Plaintiff asserts claims for violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030(A)(2)(C), 1030(A)(5)(C) (Counts One and Three); computer trespass under N.C. GEN. STAT. § 1-539.2A (Count Three); identity theft under N.C. GEN. STAT. § 1-539.2C (Count Four); and invasion of privacy – offensive intrusion (Count Five). For relief, Plaintiff seeks compensatory damages, punitive damages, and attorney fees, as well as a permanent injunction.

Defendant filed the pending motion to dismiss on August 26, 2019, seeking dismissal of this action under the doctrine of res judicata. (Doc. No. 5). Plaintiff filed a response on September 23, 2019, and Defendant filed a Reply on October 10, 2019. (Doc. Nos. 9, 11). This matter is ripe for adjudication.

## II. STANDARD OF REVIEW

Under North Carolina law, the doctrine of res judicata, or claim preclusion, prevents a party from re-litigating prior resolved claims, and forces a party to join all matters that can or should have been asserted in a single action.[2] Skinner v. Quintiles Transnational Corp., 167 N.C. App. 478, 482, 606 S.E.2d 191, 193 (2004). For res judicata to apply, three elements must be

---

[2] As federal courts are mandated to give state court judgments full faith and credit as would be given them in the state they were entered, federal courts must determine the preclusive effect of a North Carolina judgment by referring to North Carolina state preclusion law. E.g., George v. McClure, 245 F. Supp. 2d 735, 738 (M.D.N.C. 2003).

4

present: (1) a final judgment on the merits in a prior suit; (2) an identity of the parties in each case; and (3) an identity of the same claims. Id.; accord Martin v. Am. Bancorporation Ret. Plan, 407 F.3d 643, 650 (4th Cir. 2005) (quoting Pueschel v. United States, 369 F.3d 345, 354-55 (4th Cir. 2004)).

In addition to matters actually litigated or determined in the prior case, res judicata also bars "all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward for determination." Skinner, 167 N.C. App. at 482, 606 S.E.2d at 193-94; see also Smith v. Bank of Stanly, 219 N.C. App. 651, 723 S.E.2d 174 (2012) (unpublished) ("Strict identity of issues, however, is not absolutely required and the doctrine of res judicata has been accordingly expanded to apply to those issues which could have been raised in the prior action, but were not."). Thus, although North Carolina courts have not adopted the federal "transactional approach" to res judicata in which all issues arising out of a single transaction or series of transactions must be tried together as one claim, North Carolina law mandates that "[a] party is required to bring forth the whole case at one time and will not be permitted to split the claim or divide the grounds for recovery; thus, a party will not be permitted, except in special circumstances, to reopen the subject of the … litigation with respect to matters which might have been brought forward in the previous proceeding." Rodgers Builders, Inc. v. McQueen, 76 N.C. App. 16, 23, 331 S.E.2d 726, 730 (1985). Moreover, "the defense of res judicata may not be avoided by shifting legal theories or asserting a new or different ground for relief." Skinner, 167 N.C. App. at 483, 606 S.E.2d at 194 (citing Rodgers, 76 N.C. App at 30; 331 S.E.2d at 735).

Finally, while a court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, several factors both permit and oblige this Court to consider the various

5

judicial documents that Defendant references as exhibits without converting the motion to a motion for summary judgment. First, a court may consider matters of public record in conjunction with a motion to dismiss, including specifically records from other court proceedings. E.g., Walker v. Kelly, 589 F.3d 127, 139 (4th Cir. 2009). Second, a court may properly examine documents that are referenced in the complaint. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). Third, and specifically related to res judicata, a court may take both judicial notice of facts from prior judicial proceedings and the filings from such proceedings. Andrews v. Daw, 201 F.3d 521, 524 n.1 (4th Cir. 2000).

### III.   DISCUSSION

As stated above, res judicata bars a subsequent action if (1) there is a final judgment on the merits in an earlier case; (2) both actions involve the same parties; and (3) the claims are deemed the same. Skinner, 167 N.C. App. at 482, 606 S.E.2d at 193. The parties agree that the first two elements are met, and the parties disagree over the third element only. As to the third element, "a final judgment bars not only all matters actually determined or litigated in the prior proceeding, but all relevant and material matters within the scope of the proceeding which the parties, in the exercise of reasonable diligence, could and should have brought forward." Skinner, 167 N.C. App. at 482, 606 S.E.2d at 193.

As noted above, Plaintiff asserts claims in this action for violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. §§ 1030(A)(2)(C), 1030(A)(5)(C); computer trespass under N.C. GEN. STAT. § 1-539.2A; identity theft under N.C. GEN. STAT. § 1-539.2C; and invasion of privacy – offensive intrusion. Those claims arise from Plaintiff's allegations that Defendant has purportedly used electronic devices to gain unauthorized access to Plaintiff's personal and business accounts, has tampered with Plaintiff's passwords, and has altered

6

Plaintiff's electronically stored information. Defendant argues that, in the DV action, Plaintiff expressly brought claims for, among other things, violations of the CFAA, computer trespass under North Carolina law, and invasion of privacy under North Carolina law. Defendant argues that, by virtue of Plaintiff's voluntary dismissal with prejudice, each of those claims (now Counts One, Two, Three, and Five in the current action) were conclusively and finally adjudicated on the merits. As for Plaintiff's current claim for identity theft under N.C. GEN. STAT. § 1-539.2C (Count Four in the current action), Defendant argues that claim is also barred by the doctrine of res judicata because, while not expressly asserted in the DV Action, it could and should have been brought in the DV action.

Defendant asserts that there is no prohibition in Chapter 50B of the North Carolina General Statutes against joining other possible claims with the request for a domestic violence protective order. Defendant states that, to the contrary, North Carolina law expressly contemplates that protective order actions will be litigated alongside other claims. Defendant notes that N.C. GEN. STAT. § 50B-2(a) provides, in relevant part, that: "Any person residing in this State may seek relief under this Chapter by filing a civil action or by filing a motion in any existing action filed under Chapter 50 of the General Statutes alleging acts of domestic violence against himself or herself or a minor child who resides with or is in the custody of such person." N.C. GEN. STAT. § 50B-2(a); see also N.C. GEN. STAT. § 50B-7 ("The remedies provided by this Chapter are not exclusive but are additional to remedies provided under Chapter 50 and elsewhere in the General Statutes."). For the following reasons, the Court does not agree that the claims raised in this action are barred by res judicata.

Here, the prior action brought by Plaintiff was a Chapter 50B domestic violence action, which sought equitable relief of a specialized nature. The North Carolina legislature enacted

North Carolina's Domestic Violence Act, N.C. GEN. STAT. Chapter 50B, "to respond to 'the serious and invisible problem' of domestic violence." Augur v. Augur, 356 N.C. 582, 591, 573 S.E.2d 125, 132 (2002) (quoting State v. Thompson, 349 N.C. 483, 486, 508 S.E.2d 277, 279 (1998)). Thus, Chapter 50B specifically governs actions relating to domestic violence and provides for "protective orders," which includes "any order entered pursuant to this Chapter upon hearing by the court or consent of the parties." N.C. GEN. STAT. § 50B-1(b)(c). A person instituting an action under Chapter 50B "may seek relief . . . alleging acts of domestic violence . . . ." Id. § 50B-2(a). Under Section 50B-3, if a court finds that an "act of domestic violence has occurred, the court shall grant a protective order restraining the defendant from further acts of domestic violence." Id. § 50B-3(a). The statute further provides that a protective order may include "any of the following types of relief":

> (1) Direct a party to refrain from such acts; (2) Grant to a party possession of the residence or household of the parties and exclude the other party from the residence or household; (3) Require a party to provide a spouse and his or her children suitable alternate housing; (4) Award temporary custody of minor children and establish temporary visitation rights pursuant to G.S. 50B-2 if the order is granted ex parte, and pursuant to subsection (a1) of this section if the order is granted after notice or service of process; (5) Order the eviction of a party from the residence or household and assistance to the victim in returning to it; (6) Order either party to make payments for the support of a minor child as required by law; (7) Order either party to make payments for the support of a spouse as required by law; (8) Provide for possession of personal property of the parties, including the care, custody, and control of any animal owned, possessed, kept, or held as a pet by either party or minor child residing in the household; (9) Order a party to refrain from doing any or all of the following: a. Threatening, abusing, or following the other party. b. Harassing the other party, including by telephone, visiting the home or workplace, or other means. b1. Cruelly treating or abusing an animal owned, possessed, kept, or held as a pet by either party or minor child residing in the household. c. Otherwise interfering with the other party; (10) Award attorney's fees to either party; (11) Prohibit a party from purchasing a firearm for a time fixed in the order; (12) Order any party the court finds is responsible for acts of domestic violence to attend and complete an abuser treatment program if the program is approved by the Domestic Violence Commission; and (13) Include any additional prohibitions or requirements the

court deems necessary to protect any party or any minor child.

Id. Finally, the statute provides that "[p]rotective orders shall be for a fixed period of time not to exceed one year." Id. § 50B-3(b).

Contrary to the Chapter 50B proceeding instituted by Plaintiff in North Carolina state court, the type of claims raised here are in the nature of a garden-variety civil suit, in which the parties are allowed under the rules of civil procedure to engage in discovery, file dispositive motions, and even go to trial. The nature of a Chapter 50B action, which provides a vehicle for persons to seek prompt, temporary relief from various acts of domestic violence, simply does not contemplate the litigation of claims such as those raised here. See Rudder v. Rudder, 234 N.C. App. 173, 182, 759 S.E.2d 321, 328 (2014) ("The North Carolina Domestic Violence Act, set out in Chapter 50B of the General Statutes, specifies the procedural framework for the issuance of [domestic violence protection orders]."); Henderson v. Henderson, 234 N.C. App. 129, 133, 758 S.E.2d 681, 684 (2014) ("The procedures under [Section] 50B–2 are intended to provide a method for trial court judges or magistrates to quickly provide protection from the risk of acts of domestic violence by means of a process which is readily accessible to pro se complainants."). Furthermore, as noted, all orders under Chapter 50B expire within one year. Nowhere does Chapter 50B authorize an award of monetary damages resulting from claims of cyber trespass, identity theft, or the other state law torts raised here.[3] In other words, the Court finds nothing in

---

[3] Plaintiff points to Northwest Financial Group v. County of Gaston, 110 N.C. App. 531, 430 S.E.2d 689 (1993), in which the North Carolina Court of Appeals reasoned that if damages had not been incurred at the time of the first lawsuit, then a later lawsuit seeking damages would not be barred by res judicata. The Northwest court "remanded to the trial court for a determination at trial as to whether or not Northwestern had incurred any monetary damages at the time the [first action] was filed." 110 N.C. App. at 541, 430 S.E.2d at 695. Plaintiff argues that at the time of filing of the DV Action, no claims for monetary damages were available to him. Defendant counters that Plaintiff references the existence of monetary damages in the Original

Chapter 50B providing jurisdiction to the state court to adjudicate the civil claims raised in this action. Accord Hagee v. City of Evanston, 729 F.2d 510, 515 n.9 (7th Cir. 1984) (applying res judicata bar, noting that "this is not a case involving a plaintiff who sought urgently needed temporary injunctive relief and then came to court with a claim for damages shortly thereafter as part of the same suit").

      The Court is also not persuaded otherwise by the unpublished and non-binding opinions cited by Defendant in support of the argument that res judicata bars this action. For example, Defendant cites to Parker v. Alston, an unpublished opinion in which the North Carolina Court of Appeals found that, after a stipulation of dismissal with prejudice was filed in a domestic violence restraining order action, res judicata estopped one of the parties from making the same claims in a subsequent child custody proceeding. No. COA03-477, 2004 WL 503648, at *3 (N.C. Ct. App. Mar. 16, 2004). The North Carolina Court of Appeals stated: "In this case, the parties agreed, and an order was entered, that the claims pertaining to domestic violence occurring prior to August 1997 be dismissed with prejudice and that orders entered with respect therefore be dissolved. Thus, the prior order was res judicata as to those claims." Id. In Parker, unlike in this action, however, the subsequent claims that were barred were seeking the same relief as that sought in the first action, and the relief sought was specifically covered by Chapter 50B. That is not the case here, where Plaintiff sought a protective order for injunctive relief based on allegations of domestic violence in the Chapter 50B action, and where he seeks

---

DV Complaint, which was incorporated into the Amended DV Complaint. This Court does not deem the issue of whether Plaintiff had already incurred damages when he initiated the Chapter 50B proceedings as dispositive. Rather, the finding of the lack of res judicata rests on the fact that, for the reasons the Court has already discussed at length, North Carolina's Chapter 50B proceedings are fundamentally different in nature than civil actions such as the one here.

compensatory damages in this action for Defendant's alleged acts of committing various state law torts and violating federal and state law regarding computer tampering.  The fact that Plaintiff alluded to alleged conduct by Defendant in his application for a domestic violence order through Chapter 50B does not mean he is now precluded from bringing a lawsuit against Defendant alleging various legal claims based on the same conduct.

Defendant also cites Simon v. Moore, in which the North Carolina Court of Appeals affirmed the trial court's determination that res judicata barred a subsequent action for malicious prosecution when a restraining order claim had been dismissed with prejudice and further claims were waived by the parties' agreement.  242 N.C. App. 252, 775 S.E.2d 926 (2015).  Here, however, the settlement and dismissal by the parties in the Memorandum of Judgment does not include a release of all further claims arising out of the conduct alleged in the Chapter 50B proceeding.  Indeed, as Plaintiff notes, he specifically declined to enter into a release of all further claims when entering into the Memorandum of Judgment in the Chapter 50B action.  See (Doc. No. 9 at 4).  Thus, the Court finds that Simon does not support Defendant's res judicata argument.

Here, for all these reasons, the Court finds that res judicata does not bar Plaintiff's claims in this action and Defendant's motion to dismiss will therefore be denied.

### IV.  CONCLUSION

For the reasons stated herein, Defendant's motion to dismiss is denied.

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's Motion to Dismiss, (Doc. No. 5), is **DENIED**.

Signed: November 6, 2019

Max O. Cogburn Jr.
United States District Judge